IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Jimmie L. Reed,<br><br>      Plaintiff,<br><br>   v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>      Defendant. | No. 1:06-cv-00814-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

**PRELIMINARY STATEMENT**

1. This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

**JURISDICTION**

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

1

## PARTIES

3. Jimmie L. Reed is a Black employee of NGSS who has been employed by NGSS for over 30 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

2

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race.  The case was assigned a case number of 1:01-cv-111-(G)-(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-cv-111-(LG)-(RHW).

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Jimmie L. Reed's severed action was assigned the case number of 1:06-cv-00814-(LG)-(RHW).

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

a)  By failing to treat Blacks on an equal basis with Whites.

b)  By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

c)  By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

d)  By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e)  By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

4

inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

5

21. Plaintiff has worked for 30 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman "or "half-hat," however, plaintiff has never been selected for the position in spite of his 30 years at NGSS. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat." Indeed, in 1988 or 1989, he was promoted to the position of work leaderman, only for a six-month period; however, he was subsequently demoted from that position by George Smith, a White supervisor. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This occurrence includes the following instances:

    a) In 1988 or 1989, plaintiff applied for work leaderman again, a position for which plaintiff was qualified, but for which he was not selected because of his race. That position had been given to Ted Brown, who later became a supervisor, who said that he thought that plaintiff should have been promoted to the position of leaderman before Mr. Brown was promoted to that position. However, in or about 1980, Jake Ivey, a supervisor, stated to plaintiff that the reason Blacks would not be set up for higher positions was that Blacks would not work for Blacks.

    b) In 2000, plaintiff applied for work leaderman , a position for which plaintiff was qualified, but for which he was not selected because of his race. In that instance, Frank Sistruck, who is White, was placed in the position after being "cut back" from his previous position on the second shift.

    c) Starting in 2005, plaintiff has been functioning as a temporary work leaderman sporadically; however, he has not been appointed to that position on a permanent basis.

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

6

22. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace. Plaintiff's assignments to such employment environments includes the following instances:

   a) Plaintiff has been forced to work in either the hot sun or in the cold while similarly situated White employees were allowed to work in more comfortable conditions.

   b) On one occasion in the late 1990s, an older Black co-worker was forced to work in a tight, enclosed area in the hole; at the same time a younger White worker said he wasn't going to do the job in the hole and so was moved to the shop instead. Plaintiff was required to work in the sonar dome, which is tight, small, and hazardous.

   c) In the 1990s, White co-workers would complain about such assignments and would be transferred to another area. Plaintiff knows that at least two White workers complained about this kind of work assignment and were not required to perform it.

23. Plaintiff, as well Black co-workers have been denied pay for discriminatory reasons. For example, plaintiff and a number of his Black co-workers were informed that they would not receive bonuses for the work they had completed on a special job in 2004-2005, when similarly situated White workers who had worked on this job did receive bonuses.

24. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about these instances of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the

Plaintiff Jimmie L. Reed's Complaint for  
Declaratory and Injunctive Relief and Damages  
No. 1:06-cv-00814-LG-RHW

7

historical lack of sufficient response on the part of NGSS.  Furthermore, various supervisors were in the locations where this offensive graffiti and other types of depictions were prominently displayed.  Such exposure includes the following instances:

    a) Since the day that he started in 1976, plaintiff has seen offensive racially derogatory writing, depictions, and/or graffiti in the restrooms on both banks of the shipyard.  Plaintiff continued to see offensive racially derogatory writing, depictions, and/or graffiti at least until 2001.

    b) Some of the offensive racially derogatory writing, depictions, and/or graffiti referenced the KKK.  Plaintiff did not complain at that time because, based on NGSS's historical response, plaintiff believed that the response would be insufficient to remedy the situation and because plaintiff believed he would be subjected to retaliation for complaining.  However, NGSS was or should have been aware of the presence of the offensive racially derogatory writings, depictions, and/or graffiti because there were supervisors who used the same facilities in which the offensive racially derogatory writing, depictions, and/or graffiti was in plain view.

25. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to the term "nigger" or other racial epithets, being displayed as offensive racially derogatory writing, depictions, and/or graffiti on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets in offensive racially derogatory writing, depictions, and/or graffiti, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff did not complain about each and every instance of having seen this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.

26. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  The hostile work environment comprises and/or has culminated in the adverse treatment

Plaintiff Jimmie L. Reed's Complaint for  
Declaratory and Injunctive Relief and Damages  
No. 1:06-cv-00814-LG-RHW  
    8

described in paragraphs 20 through 23, incorporated as though fully set forth herein.

27. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

29. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

30. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding the same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 24 through 29, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

31. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

32. No plain, adequate, or complete remedy at law is available to plaintiff. Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS. Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

9

33. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

34. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 33 and further alleges for a first claim for relief as follows:

35. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

36. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 33 and further alleges for a second claim for relief as follows:

37. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

38. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

39. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

10

## **PRAYER**

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 1 through 39 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 1 through 39 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure

Plaintiff Jimmie L. Reed's Complaint for
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

11

      consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated:  September 20, 2006

                                    SANDRA JARIBU HILL, Esq.
                                    Mississippi Workers Center for
                                    Human Rights

                                  WILLIAM C. MCNEILL, III, Esq.
                                    The Legal Aid Society-Employment
                                    Law Center

                                  Counsel for Plaintiffs


                           By:    /s/ William C. McNeill, III
                                  WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California 94107

Plaintiff Jimmie L. Reed's Complaint for          12
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi 38702-1223
(662) 334-1122

Plaintiff Jimmie L. Reed's Complaint for                                                                                  13
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros

Plaintiff Jimmie L. Reed's Complaint for　　　　　　　　　　　　　　　　　　　　　　　　　14
Declaratory and Injunctive Relief and Damages
No. 1:06-cv-00814-LG-RHW